IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HERBERT E. WILSON,

        Plaintiff,

v.                                                        CIV 05-701 KBM

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

       Plaintiff Herbert Wilson worked in the past as a chile dryer and forklift operator. He first applied for social security benefits in 2002, but did not pursue the matter after the initial denial. He later applied for benefits in February 2003 and that second application is the subject of this appeal. Wilson asserts that he became disabled in 2001 due to low back pain, arthritis in his left arm, and depression. *See, e.g, Administrative Record* ("*Record*") at 15-16. Administrative Law Judge ("ALJ") Gary L. Vanderhoof found that, absent alcohol or drug use, Plaintiff has the residual functional capacity to perform a "light work with occasional postural changes, no climbing but could sit/stand and walk for 6 hours in an 8 hour day." *Id.* at 24.

       The ALJ concluded Plaintiff not disabled at Step 5 under the framework of Medical-Vocational Rule 202.18. With the aid of testimony from a vocational expert, he specifically found that Plaintiff could perform at least two jobs – gambling floor attendant and shipping and receiving weigher – and that, together, those positions provided 665 available jobs in the regional economy. *Id.* at 22. The Appeals Council declined review on June 3, 2005, thereby rendering the ALJ's decision final. *Id.* at 7.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 8.* The matter is before me on Plaintiff's motion requesting that the agency decision be reversed and the matter remanded for rehearing. *Doc. 14.*

If the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003).[1] Generally, my assessment is based on a "meticulous" review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *Hamlin,* 365 F.3d at 1214; *see also Langley,* 373 F.3d at 1118.

However, the record in this case is extraordinarily voluminous, and each of the three assignments of error raised by Plaintiff is primarily an error of law. *See Doc. 15.* Therefore, all portions of the record that bear on the legal arguments raised by Plaintiff have been read and carefully considered, but I did not review every single page of the medical documents in detail, as is normally the case. *See Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005) ("we meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the ***substantiality test*** has been met.") (citations

---

[1] "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214; *Doyal,* 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record of if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin,* 365 F.3d at 1214.

omitted and emphasis added); *Candelario v. Barnhart,* ___ Fed. Appx. ___, 2006 WL 308263 (10th Cir. 2006) ("'[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal *apart from* a lack of substantial evidence.' *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993).") (emphasis added).

I find Plaintiff's argument on the residual functional capacity issue to be dispositive. Because that issue has consequences for the remaining allegations of error, I remand the matter to the Commissioner for further proceedings.

In his first hypothetical question to the vocational expert ("VE"), ALJ Vanderhoof stated that Plaintiff's residual functional capacity included the ability to "sit six of an eight hour [day], and stand and walk six of eight hours." *Record* at 749. In the next hypothetical, which assumed all of the restrictions of the previous hypothetical, ALJ Vanderhoof added another restriction[2] to allow "*occasional positional changes.*" *Id.* at 751 (emphasis added). In response, the vocational expert testified that Plaintiff would still be able to perform the rental clerk, gambling attendant, and laundry folder positions previously identified, and added a shipping and receiving weigher position because it had a "sit and stand option." *Id.* at 751. In his written opinion, the ALJ adopted the vocational expert's testimony for the residual functional capacity: "perform light

---

[2] ALJ Vanderhoof also imposed the restriction of no climbing. It is not entirely clear what prompted him to adopt any of the restrictions he did in his residual functional capacity finding. For example, he did not cite any medical or other evidence for the restriction, instead finding that "no treating or examining . . . statements . . . indicated that the claimant was unable to engage in work activity." *Record* at 20. There is only one page in this entire record that contains any agency physician opinion, and this page does not mention any postural restrictions. *Id.* at 195. Plaintiff did not specifically testify about any such limitations or specifically mention any such restrictions in his written submission. Absent deciphering every single medical record, I will assume the ALJ imposed these limitations based on a combination of Plaintiff's physical condition, Plaintiff's daily activities, and his assessment of Plaintiff's credibility. *See id.* at 20, 122-31, 146-55, 157, 740-41, 745-47.

work with ***occasional postural changes,*** no climbing but could sit/stand/walk for 6 hours in an 8 hour day." *Id.* at 20 (emphasis added); *see also id.* at 21-23.

Plaintiff quotes extensively from Social Security Ruling 96-**8**p and *Armer v. Apfel,* 2000 WL 743680 (10th Cir. 2000).  Those authorities require that a residual functional capacity finding discuss, ***with specificity***, how long a person can perform work each day as well as the frequency of alternate periods of sitting and standing.  *See Doc. 15* at 4-5 (emphasis added).[3]

The Commissioner maintains that *Armer* is inapplicable because the decision applied Ruling 96-**9**p to situations where the claimant's residual functional capacity is for less than sedentary work.  *See Doc. 18* at 5-6 (emphasis added).  Here, the relevant work category is light.  The relevant portion of Ruling 96-**9**p provides:

---

[3] *Social Security Ruling 96-8p,* 1996 WL 374184 at * 2 governs assessing residual functional capacity in general and provides:  "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  It further provides that:

> The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual. . . .
>
> Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull").
>
> * * * * *
>
> Nonexertional capacity considers . . . abilities to perform physical activities such as postural (e.g., stooping, climbing) . . .  As with exertional capacity, nonexertional capacity must be expressed in terms of work- related functions.

*Id.* at **5-6.

4

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. ***The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.*** It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

*Social Security Ruling 96-9p,* 1996 WL 374185 at *7 (emphasis added).

It is true that Ruling 96-9p is entitled "Determining Capability To Do Other Work – Implications Of A Residual Functional Capacity For Less Than A Full Range Of *Sedentary* Work." *Id.* (emphasis added). However, I disagree that this distinction is dispositive on the issue.

A residual functional capacity finding should be detailed because "testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (quotation omitted). Moreover, the Tenth Circuit ***has*** applied Ruling 96-**9**p to light work category situations after citing the general rule that residual functional capacity findings described to a vocational expert must be specific:

> A vocational expert's testimony may provide a proper basis for an ALJ's determination at step five only when a claimant's impairments are adequately reflected in the hypotheticals posed to the expert. . . .
>
> Furthermore, ***if an ALJ finds that a claimant cannot perform the full range of work in a particular exertional category, an ALJ's description of his findings in his hypothetical and his written decision must be particularly precise.*** For example, according to one of the agency's own rulings on sedentary

5

> labor, the description of an RFC in cases in which a claimant can perform less that the ful range of work "must be specific as to the frequency of the individual's need to alternate sitting an standing." ***Social Security Ruling 96-9p*** . . . at *7. Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work. 20 C.F.R. § 404.1567(b) . . . .
>
> We find that the . . . ALJ's hypothetical to the VE lacked key information, and the ALJ's use of the VE's testimony in his final decision suffered from important gaps in analysis that do not permit us to review his reasoning. . .
>
> The record on appeal shows . . . the ALJ's . . . hypothetical questions to the VE did not contain key facts that must inform the agency's conclusion. The ALJ did not properly define how often Vail would need to change positions . . . .

*Vail v. Barnhart,* 84 Fed. Appx. 1, 4-5 (10th Cir. 2003).

Here the ALJ used the phrase "occasional positional changes" with the vocational expert. Plaintiff takes issue with the term "occasional," presumably because the word is vague. I agree with Plaintiff that the case should be remanded because of this deficiency. In *Vail,* an "as needed" description for alternate sitting and standings was not sufficiently specific. *See id.* at 5-6. Nor was the "from time to time" description in *Armer. See* 2000 WL 743680 at * 3. Nor, apparently, was the "intermittently" description in *Southard v. Barnhart,* 72 Fed. Appx. 781, 784-85 (10th Cir .2003). I find nothing in the term "occasionally" more specific than these other descriptions, and the Commissioner does not cite any decision holding to the contrary. Rather, as I read the cases, some more precise description is required.

In addition, taking the totality of the ALJ's questions to the vocational expert does not supply the requisite specificity. As the Tenth Circuit recently stated in reversing a decision from this district:

> Light work requires the ability to stand and/or walk for up to six hours a day, with intermittent sitting during the remaining time, yet plaintiff can neither stand nor walk for longer than two hours at a time before he must switch to another activity. ***An individual who must vary his standing and sitting more frequently than at scheduled breaks "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work*** (and for the relatively few light jobs which are [performed primarily in a seated position] ) ***or the prolonged standing or walking contemplated for most light work.***"  Soc. Sec. Rul. 83-12, 1983 WL 31253, at *4 (1983).

*Gutierrez v. Barnhart,* 109 Fed. Appx. 321, 327 (10th Cir. 2004) (emphasis added).

ALJ Vanderhoof did ask the vocational expert about how much missed work an employer would tolerate.  In the course of doing so, he defined "customary breaks" as occurring every two-hours, for fifteen minutes to a half an hour for lunch.  He also noted, and to which the vocational expert assented, that employers will allow bathroom or drink breaks in between regularly scheduled breaks, provided the employee did not "abuse the privilege." *Record* at 752.  He did not, however, link his prior use of the term "occasionally" to this line of questioning about scheduled breaks and bathroom breaks.  It is not a finding I can supply.

Accordingly, the matter must be remanded for a reassessment commencing with the Step 4 residual functional capacity finding.  This issue is entirely dispositive of remand, but I would further note that Plaintiff correctly states the sequence of analysis mandated by *Drapeau* and the regulations.

The Regulation "Listings" have long recognized that substance addictions can possibly be disabling.  Listing 12.09 defines "substance addiction disorders" as  "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system."  20 C.F.R., Subpart P, App. 1, Section 12.09; *see also, e.g, Petition of Sullivan,* 904

7

F.2d 826, 834-36 & n.1 (3rd Cir. 1990) (discussing historical treatment of alcoholism by Secretary and adoption of § 12.09 in 1980's).  However, "[p]ursuant to the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, a claimant is precluded from receiving benefits if 'alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that [the claimant] is disabled.'"  *Alderete v. Barnhart,* 114 Fed. Appx. 353, 355 (10th Cir. 2004) (quoting 42 U.S.C. § 1382c(a)(3)(J)) (case originating in District of New Mexico, *Aldrerete* (sic) *v. Barnhart,* CIV 01-1409 JHG).

Moreover, Regulation 404.1535 provides in full:

> (a) *General.*  **If we find that you are disabled** and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> (b) *Process we will follow when we have medical evidence of your drug addiction or alcoholism.*
>     (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>     (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>         (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>         (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535 (emphasis added); *see also id.* § 416.935 (identical).  As the emphasized plain language of the regulation  provides, the Tenth Circuit holds that the analysis under this

8

section is conducted in two parts, with the first being whether the claimant is disabled. *See Drapeau v. Massanari,* 255 F.3d 1211, 1214 (10th Cir. 2001).

Plaintiff challenges ALJ Vanderhoof's failure to follow the two-step analysis, and asserts that the ALJ failed to "consider all impairments and make a finding of disability **before** he considers whether substance abuse is material." *Doc. 15* at 6-7 (emphasis added). It is true that ALJ Vanderhoof did not first decide whether Plaintiff was disabled and then ascertain whether Wilson would be disabled if he did not have a substance addiction problem.

Rather, The ALJ focused only on what *Drapeau* and other Tenth Circuit decisions have called "key." That is, "'the **key factor** the Commissioner must examine in determining whether drugs or alcohol are a contributing factor to the claim is whether the Commissioner would still find the claimant disabled if he . . . stopped using drugs or alcohol.'" *Alderete,* 114 Fed. Appx. at 355 (quoting *Drapeau,* 255 F.3d at 1214) (emphasis added); *see also Grogan,* 399 F.3d at 1266; *Adame v. Apfel,* 4 Fed. Appx. 730, 732-33 (10th Cir. 2001); *Record* at 17-18, 20, 23-24.  Because the proceedings must be remanded at Step 4, I express no opinion whether this derivation from the *Drapeau* decision alone would be grounds for remand. *See Salazar v. Barnhart,* 344 F. Supp. 2d 723, 732-35 (D.N.M. 2004) (where ALJ appeared not to apply the two-step procedure and focused on the "key" factor).

Wherefore,

9

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 14)* is GRANTED, and the matter is remanded to the Commissioner for further proceedings. A final order will enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.